**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ALLSTATE INSURANCE** | ) | |
| **COMPANY, as subrogee of** | ) | |
| **John Clark,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 09 C 6379** |
| **v.** | ) | |
| | ) | **Magistrate Judge Morton Denlow** |
| **ELECTROLUX HOME** | ) | |
| **PRODUCTS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Electrolux Home Products Inc.'s Motion to Strike Expert Report or Disqualify Expert From Offering Testimony. Pursuant to Rule 37 of the Federal Rules of Civil Procedure, Defendant Electrolux Home Products, Inc. ("Defendant" or "Electrolux") asks the Court to either strike the report of Plaintiff Allstate's ("Plaintiff" or "Allstate") expert witness William R. Keefe ("Keefe") or disqualify him from offering any testimony in this case.

Defendant alleges that Keefe, in forming his expert opinion, considered documents that are subject to a confidentiality agreement ("Confidential Documents") between Defendant and a third party ("Carrier One") in an unrelated arbitration proceeding involving a similar claim that Defendant's dryer caused a fire. For the reasons set forth below, the Court denies Defendant's motion to strike Keefe's report or disqualify Keefe from testifying. As stated during the hearing on December 14, 2011, the Court orders Keefe to amend his

expert report to eliminate any reference to the Confidential Documents and to reflect his testimony that he did not rely on the Confidential Documents in forming his opinion in this case.

# I.  BACKGROUND FACTS

## A.    THE LITIGATION.

On September 1, 2006, John Clark experienced a fire at his residence in Lake Forest, Illinois.  Pursuant to an insurance policy, Allstate paid Clark $202,924.96 for the damages resulting from the fire.  Allstate investigated the fire and determined that the cause of the fire was an accumulation of lint in the heat vent at the rear of the dryer drum from a Frigidaire brand clothes dryer manufactured by Electrolux.  In this lawsuit, Allstate, as subrogee of John Clark, seeks to recover damages from Electrolux resulting from that fire.  Allstate brought the suit in the Circuit Court of Lake County under theories of strict liability, negligence, and breach of implied warranty.  Dkt. 1.  Electrolux removed this suit to this Court on October 12, 2009.  *Id.*

### 1.  The Keefe Expert Report.

In the course of discovery, Allstate designated Keefe as their expert.  Keefe prepared and submitted a detailed sixteen page expert's report in accordance with Federal Rule of Civil Procedure 26(a)(2).  Mr. Keefe has been a practicing engineer for over twenty-seven years in the areas of mechanical, safety and forensic engineering.  He has participated in the investigation of approximately fifty fires involving Electrolux dryers.  In his report he describes his methodology, the background of the incident, the site inspections he made on

September 12, 2006, October 6, 2006, and April 19, 2011, and the laboratory inspection of the dryer and other artifacts conducted on November 25, 2008.

The report then proceeds through a detailed nine page discussion and analysis of the dryer at issue. The report reviews the May, 2003 Consumer Products Safety Commission Report on Electric Clothes Dryers and Lint Ignition. The report explains that Keefe has been involved in approximately fifty investigations of fires that originated with Electrolux dryers of this type and that the patterns of lint accumulation were similar.

Keefe issued eight detailed opinions over three pages based on his education, training and experience, inspection and testing performed in this investigation, and the facts contained in the materials. Keefe attached a complete curriculum vitae and a list of twenty-eight cases in which he has testified as an expert over the past four years. As Appendix I, he listed forty categories of information and documents reviewed and relied upon. Only half of these are specifically mentioned in the report.

## 2. Prior Arbitration Proceeding Involving Electrolux.

In 2007, Electrolux entered into a binding arbitration agreement ("Arbitration Agreement") with Carrier One, a third party insurance carrier which mandated arbitration of any subrogation claims for amounts under a certain threshold arising from Electrolux products.[1] Under the terms of the Arbitration Agreement, the "parties and the arbitrators" were to treat "the proceedings, any related discovery, and the decisions of the arbitrators as

---

[1]The Court has reviewed the Arbitration Agreement *in camera*.

confidential." Electrolux and Carrier One agreed that "neither the content nor the results of the arbitration may be used in any other proceeding."

Subsequently, Electrolux and Carrier One submitted to arbitration in at least one case in which Keefe was retained as a consulting expert for Carrier One. Pursuant to the Arbitration Agreement, the arbitration resulted in the designation of materials as confidential ("Confidential Documents"). Def. Mem.1.[2] These documents included photographs, test results, expert reports, pleadings, briefs, and depositions. *Id.* The root of the present conflict is that Keefe, in his role as a consulting expert for Carrier One, was privy to documents designated as confidential.[3] *Id.* at 2. Grotefeld Hoffmann Schleiter Gordon & Ochoa LLP ("GHSGO") represented Carrier One in the arbitration.[4] In that capacity, GHSGO worked with Keefe, who was retained directly by Carrier One. *Id.* GHSGO now represents Allstate, who has hired Keefe in the present matter as a testifying expert.

---

[2] "Def. Mem." refers to Defendant Electrolux Home Products, Inc.'s Memorandum of Law In Support of Its Motion To Strike Expert Report Or Disqualify Expert From Offering Testimony, Dkt. 59.

[3] The Court noted that the Agreement was not signed by Keefe. Upon questioning, Keefe stated that he understood that he should not use the confidential documents or produce the documents to other people because they were confidential. Hr'g Tr. 48, Dec. 14, 2011.

[4] "Pl. Resp." refers to Plaintiff Allstate Insurance Company's Opposition To Defendant's Motion To Strike Expert Report Or Disqualify Expert From Offering Testimony, Dkt. 64.

4

### 3. The Reference to Confidential Information in Keefe's Expert Report.

In the case at bar, Allstate submitted to Electrolux a report pursuant to Federal Rule of Civil Procedure 26(a)(2)(B) which, appropriately, included a list of the facts and data considered by Keefe in forming his expert opinion. One of the forty items on the list was "Information on Electrolux dryer fires subject to confidentiality agreements." Def. Mem. Ex. A, at 3.

Keefe's deposition testimony was ambiguous on what, if any, confidential information he relied upon. Keefe Dep. 21:2-15 (Def. Mem. Ex. B). When Electrolux inquired specifically about the contents of the Confidential Documents, Allstate's counsel objected and prevented Defendant from pursuing the line of questioning. *Id.* at 22:18 - 25:12. This left Defendant in a tough spot: it did not want to violate the confidentiality of those documents, but it wanted to be able to cross-examine Keefe on all materials that he considered and rejected or considered and relied upon in forming his opinion.

Electrolux urges the Court to find that Allstate has not complied with Rule 26 and asks the Court, pursuant to Federal Rule of Civil Procedure 37, to strike Keefe's expert report and prohibit him from testifying at trial. Specifically, Electrolux argues it cannot effectively cross-examine Keefe on his consideration of the Confidential Documents. Electrolux identifies only two ways in which it could cross-examine Keefe on these documents: 1) Electrolux could cross-examine Keefe based on its own possession of the Confidential Documents and consequently breach the confidentiality agreement with Carrier One, which prohibits it from using the documents in any other matter; or 2) Allstate could produce the

documents in compliance with Rule 26, which Electrolux points out it cannot do because Allstate does not possess the Confidential Documents.[5]

The Court has reviewed, *in camera*, the Arbitration Agreement, the Confidential Documents to which Keefe was privy, and Keefe's expert report in the current matter.

## B.    THE DECEMBER 14, 2011 HEARING.

The parties completed briefing on the motion and the Court held oral arguments on December 14, 2011. In the interest of resolving the issue, Allstate's counsel asked Keefe to be present in court. Both the Court and counsel for each side questioned Keefe on his use of the Confidential Documents in preparing his report.

Keefe explained to the Court that in preparing Appendix I of his report ("Information & Documents Reviewed and Relied Upon") he listed all the documents that he reviewed and studied in preparing the report, as well as information that was part of his background. Keefe testified that many of the Confidential Documents he reviewed in the Carrier One arbitration were duplicative of documents he had which were not confidential. Hr'g Tr. 43.[6] In Appendix I, Keefe separately listed all documents that were produced in a non-confidential manner, even if they overlap with the Confidential Documents. *Id.* at 67. When asked why he included the reference to the Confidential Documents, Keefe explained that it was part of

---

[5]GHSGO's possession of the documents in their representation of Carrier One does not mean they have those documents for purposes of their representation of Allstate.

[6]All citations to "Hr'g Tr." in this opinion refer to the hearing held on December 14, 2011.

his knowledge base when he wrote his expert report and he thought it was appropriate to inform Electrolux that he had that knowledge. *Id.* at 47-48.

Regarding the documents that are confidential, Keefe explained that he received those documents and reviewed them for his work on the arbitration matter: he did not read, study, or review those documents as part of the work process in preparing his report in this case. *Id.* at 61-65. Keefe testified several times that, absent knowledge of the Confidential Documents, his opinions in the present case would be the same. *Id.* at 43-44, 65-66. He stated that if the Court ordered him not to rely on the information he learned in the arbitration proceedings, he would not need to revise his expert report. *Id.* at 46.

## II. LEGAL STANDARDS

## A. FEDERAL RULE OF CIVIL PROCEDURE 26.

Federal Rule of Civil Procedure 26(a)(2) sets the standards for disclosure of expert testimony. Specifically, Rule 26(a)(2)(B) requires a party to submit a report from any expert witness it might use at trial. This report must include:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B).

A review of the recent history of the standards for discovery relating to testifying experts begins with the 1993 amendments, which required a testifying expert to provide a report setting forth a complete statement of the expert's opinions and "the data and other information considered by the witness in forming the opinions." The rule was amended in 2010 to require the disclosure of "facts or data" rather than "data or other information," which made clear that disclosure of theories or mental impressions of counsel is not required. The committee urged that the phrase "facts or data" was to be interpreted broadly and include any facts or data considered by the expert, not only those relied upon. Fed. R. Civ. P. 26 advisory committee's note (2010 Amendments).

## B.      FEDERAL RULE OF CIVIL PROCEDURE 37.

The sanctions for noncompliance with disclosure requirements are found in Rule 37 of the Federal Rules of Civil Procedure. Rule 37 allows a district court to impose sanctions if the court finds that a party did not comply with discovery requirements. Where a party fails to provide information required by Rule 26(a) "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 641 (7th Cir. 2008). Rule 37 further provides that in addition to, or instead of, the exclusion sanction the court may award reasonable expenses, inform a jury of the party's failure, and impose other appropriate sanctions. Fed. R. Civ. P. 37(c)(1). A Rule 37 sanction must be "one that a reasonable jurist, apprised of all the circumstances, would have chosen as proportionate to the infraction." *Salgado v. Gen. Motor*

8

*Corp.*, 150 F.3d 735, 740 (7th Cir. 1998)*; Weistock v. Midwestern Reg'l Med. Ctr.*, No. 07 C 1678, 2010 U.S. Dist. LEXIS 39935, at *8 (N.D. Ill. Apr. 23, 2010).

## C.    DISQUALIFICATION OF EXPERTS.

Courts have the power to disqualify an expert witness to protect the integrity of the adversary process and to promote public confidence in the legal system. *Lifewatch Serv., Inc. v. Braemer, Inc.*, No. 09 C 6001, 2010 WL 3909483, at *1 (N.D. Ill. Sept. 28, 2010). When a party argues that an expert should be disqualified because he or she possesses confidential information, that party must show: 1) a confidential relationship existed between itself and the expert, and 2) it exchanged confidential information with the expert that is relevant to the current litigation. *Id.* In some cases, courts have suggested that where the policy concerns regarding fairness and integrity of the process are sufficient, they may warrant disqualification of an expert even when the two factor test is not met. *Id.*

Disqualification is a "drastic measure which courts should hesitate to impose except when absolutely necessary." *BP Amoco Chem. Co. v. Flint Hills Res.*, 500 F. Supp. 2d 957, 960 (N.D. Ill. 2007). The party seeking to have an expert disqualified—Electrolux in this case—carries the heavy burden of showing a confidential relationship and the transmission of confidential information. *Id.* Electrolux cannot meet this burden simply though conclusory assertions. *Id.*

### III.  ISSUES PRESENTED

1.  Whether an expert may consider or rely upon confidential information, which has not been produced to the other side, in an expert report.

ANSWER: No.

2.  Whether a party may cross-examine an expert on confidential information which the expert has seen in another similar case, but which has not been produced, considered, or relied upon in the present case.

ANSWER: No.

3.  Whether an expert witness should be disqualified from testifying because he had access to relevant and confidential information through his retention as a consulting expert in an unrelated but factually similar case.

ANSWER: No.

## IV.  DISCUSSION

The goal of Rule 26 disclosure requirements, and the Court's goal in this case, is to create a level playing field.[7]  In the case at bar, this means enabling Allstate to retain an expert who has seen confidential information from a similar case, while not forcing Electrolux to breach its confidentiality agreement in order to cross-examine the expert.  This goal is accomplished by not allowing the expert to consider or rely upon the Confidential Documents in preparing his report and by not allowing Defendant to question him on them.

Electrolux expressed a number of legitimate concerns when it learned that Keefe listed the Confidential Documents in the appendix to his expert report.  Electrolux was concerned

---

[7]In its brief, Allstate argued that Electrolux waived its right to disclosure under Rule 26 because it simultaneously sought to enforce the confidentiality provision while demanding production of the Confidential Documents.  The parties did not argue this point during oral arguments and it appears to be a moot point given the resolution reached during the hearing, which is reflected in this opinion.

that Keefe would select certain information from the Confidential Documents, supportive of his opinion, to use in drafting his report. Defendant determined that it would not be able to cross-examine Keefe on his use of those documents without breaching the confidentiality provision. Electrolux was also concerned that Allstate was making an end run around the Rule 26 disclosure requirements by listing, but not producing, a set of confidential documents.

Further, Electrolux is entitled to the benefit of its bargain: the arbitration agreement says that "neither the content nor the results of the arbitration may be used in any other proceeding." The issue is not limited to Electrolux's own waiver of the confidentiality provision. Even if Electrolux waived its own right to confidentiality, using those documents to cross-examine Keefe would violate the agreement with Carrier One.

A. **PLAINTIFF ALLSTATE HAS NOT VIOLATED RULE 26 BY NOT PRODUCING THE CONFIDENTIAL DOCUMENTS REFERENCED IN KEEFE'S LIST OF "INFORMATION & DOCUMENTS REVIEWED AND RELIED UPON."**

Rule 26(a)(2)(B)(ii) requires an expert to disclose, among other things, the "facts or data considered" by the expert in forming his opinion. The rule contemplates production of the materials an expert considered. *Books v. City of Indianapolis*, No. 03-cv-00918-SEB-TAB, 2011 U.S. Dist. LEXIS 84963, at *8 (S.D. Ind. Aug. 1, 2011).

The purpose of Rule 26(a)(2) is to provide notice to opposing counsel as to what an expert will testify before the deposition takes place. *Ciomber*, 527 F.3d at 642. The disclosure requirements prevent putting counsel in a position where he or she must depose

an expert without an understanding as to what the expert will testify; the rules are designed to "aid the court in its fact-finding mission by allowing both sides to prepare their cases adequately and efficiently and to prevent the tactic of surprise from affecting the outcome of the case." *Id.* at 643 (quoting *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000)). The Committee Notes to the 1993 amendments, which included the relevant disclosure requirements, explain: "This paragraph imposes an additional duty to disclose information regarding expert testimony sufficiently in advance of trial that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." Fed. R. Civ. P. 26, advisory committee's note ¶ 2 (1993 Amendments).

The Seventh Circuit has discussed the emphasis on total disclosure. *Salgado*, 150 F.3d 735, 741 n.6 (7th Cir. 1998). An expert must disclose the materials given to him to review in preparation for testifying, "even if in the end he does not rely on them in formulating his expert opinion, because such materials often contain effective ammunition for cross-examination." *Fid. Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 751 (7th Cir. 2005). The term "considered" invokes a "broader spectrum of thought than the phrase 'relied upon' which requires dependence on the information." *Bitler Inv. Venture II, LLC v. Marathon Ashland Petroleum LLC*, No. 1-04-CV-447, 2007 U.S. Dist. LEXIS 9231, at * 5 (N.D. Ind. Feb. 7, 2007) (quoting *Karn v. Ingersoll-Rand*, 168 F.R.D. 633, 635 (N.D. Ind. 1996)). However, this disclosure should not apply to confidential documents provided to an expert in another matter, which do not impact his expert opinion

12

in the present case. While "consider" is to be given a broad reading, the Seventh Circuit suggests that "considered" applies to that information an expert actively reviews and contemplates, and then chooses not to rely upon. *Fid. Nat'l Title Ins. Co.*, 412 F.3d at 751. It is this decision by the expert that is useful in cross examination, not that the expert has reviewed particular information in a separate case.

Keefe should not consider, rely upon, or list the Confidential Documents in his Rule 26 report where that information is simply part of his background. In acknowledging that he had prior access to the Confidential Documents, Keefe erred on the side of disclosure rather than risk surprise to Electrolux at a later date.[8] Perhaps unique to this case is the fact that Keefe has investigated and inspected over fifty dryer fires and only one of those matters is confidential in its entirety. Electrolux has not yet designated an expert and has ample opportunity to arrange for expert testimony to counter Keefe's opinions. The goals of Rule 26 are not hindered so long as Keefe does not consider or rely upon the Confidential Documents in this case.

During the December 14, 2011, hearing, the Court endeavored to determine whether Keefe actively considered or relied on the documents, or if they were simply part of his background knowledge. Keefe's testimony before this Court affirmed that he did not rely upon the Confidential Documents as he formed his opinion, even though he listed them under "Information and Documents Reviewed and Relied Upon." None of his opinions are based

---

[8]It is likely that Electrolux would have been equally, if not more, upset, if it learned of Keefe's role as a consulting expert in the arbitration at a later date.

13

on that material. Keefe described the work process he engaged in when preparing his expert report in this case. Hr'g Tr. 61. He was clear that he did not review any of the Confidential Documents as part of that work process. *Id.* The documents were not given to Keefe to assist in drafting his report on the Clark dryer fire.

Allstate argues that Keefe cannot erase from his memory information he learned from the confidential documents and those materials are only relevant to the extent that they are part of his "background and knowledge." Keefe testified to that assertion at his deposition. Def. Mem. Ex. B, at 2 (Keefe Dep. 21:12-15). He affirmed this position when he testified before this Court on December 14, 2011. Hr'g Tr. 46.

Keefe explained that he listed "Information on Electrolux dryer fires subject to confidentiality agreements" because he thought it was important for Electrolux to know of his involvement in those cases. *Id.* at 47-48. He consulted with his client (Allstate) and determined that designating the documents as confidential, but listing them, was an appropriate step. *Id.* at 48. The Court believes it was professionally responsible, but not required, for Keefe to take steps to ensure Electrolux knew of his access to those documents, even if they were not considered or relied upon in forming his opinion. Such candor is commendable, but he should not have included the information in Appendix I.

**B.    ONLY THE REFERENCE TO THE CONFIDENTIAL INFORMATION IN THE EXPERT REPORT SUBMITTED BY KEEFE WILL BE STRICKEN.**

   **1.  The Appropriate Remedy is to Strike All References to the Confidential Documents.**

Experts, by necessity, bring a plethora of background knowledge gathered from their professional experience. It is this experience that makes them experts. To prohibit experts from testifying because they have obtained the very experience and expertise that we value, which they list in the interest of candor, undermines the valuable role of experts in litigation. Keefe testified that the Confidential Documents are simply part of his background knowledge and he did not actively consider those documents in forming his opinion in the present case. As Keefe's report would not change absent access to the Confidential Documents, the appropriate remedy is to strike any reference to those documents from his report. The remedy herein maintains the confidentiality of the documents without putting Electrolux at an unfair disadvantage and thus keeps with the spirit of Rule 26.

## 2. Even If There Was a Rule 26 Violation, Striking the Report or Barring Keefe From Testifying Would Not Be Appropriate Because the Decision to Not Produce the Confidential Documents was Substantially Justified and Harmless.

Electrolux urges the Court to strike the expert report and prohibit Keefe from testifying pursuant to Federal Rule of Civil Procedure 37. Even where there is a Rule 26 violation, the focus turns to determining an appropriate remedy. Exclusion of evidence or a witness is an appropriate remedy unless the failure to comply is substantially justified or harmless. Fed. R. Civ. P. 37(c)(1); *Weistock v. Midwestern Reg'l Med. Ctr.*, No. 07 C 1678, 2010 U.S. Dist. LEXIS 39935, at *12 (N.D. Ill. Apr. 23, 2010). Total exclusion of an expert's testimony is an extreme sanction for the failure to comply with Rule 26(a)(2)(B)(ii). *Weistock*, 2010 U.S. Dist. LEXIS 39935, at *12. Even if it were appropriate for Keefe to have listed the Confidential Documents in Appendix I, refusing to produce the Confidential Documents was substantially justified and harmless.[9]

A district court has broad discretion in evaluating whether a Rule 26(a) violation is either substantially justified or harmless. *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003); *WDT Wireless Commc'n, Inc. v. Dolins, Dolins & Sorinsky, Ltd.*, No. 09 CV 622,

---

[9]Allstate also argues in its brief that because Electrolux has the confidential documents, they must be seeking the opinions that Keefe developed in the Carrier One matter. Allstate argues that Federal Rule of Civil Procedure 26(b)(4)(D) protects disclosure of the "facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(D). This provision of the federal rules establishes a higher barrier to discovering opinions of a non-testifying expert retained by an opposing party and is in direct contrast to the mandates of Rule 26(a)(2)(B), which applies to testifying experts in a particular case. *Sara Lee Corp. v. Kraft Foods, Inc.*, 273 F.R.D. 416, 420 (N.D. Ill. 2011). However, Electrolux seeks the documents that Keefe "considered" in developing his opinion in the present case, rather than Keefe's opinions as a consulting expert in a different case; therefore, Federal Rule of Civil Procedure 26(b)(4)(D) does not, alone, dispose of the issue.

16

2010 U.S. Dist. LEXIS 109323, at *6 (N.D. Ill. Oct. 13, 2010). The Seventh Circuit has indicated that four factors guide the discretion of the court: "1) the prejudice or surprise to the party against whom the evidence is offered; 2) the ability of the party to cure the prejudice; 3) the likelihood of disruption to the trial; and 4) the bad faith or unwillfulness involved in not disclosing the evidence at an earlier date." *Westefer v. Snyder*, 422 F.3d 570, 584 (7th Cir. 2005).

Keefe acknowledged that he received and reviewed confidential documents in at least one case controlled by the Arbitration Agreement and that those documents, in addition to his previous investigations of Electrolux dryer fires, were part of his background knowledge. Electrolux possessed those documents. Allstate did not want Keefe to violate a confidentiality provision to which he was subject. The decision to not produce the documents was substantially justified given the factual circumstances.

Further, the failure to produce the documents, and Keefe's "consideration" of them in the broadest sense, was harmless. Electrolux has not identified any particular harm or prejudice resulting from the failure to produce the confidential documents other than a broad statement that it cannot fully cross-examine Mr. Keefe. The Court finds that Keefe's opinion relies on his own investigation, other non-confidential information, and his general expertise in the field of dryer fires. There is no mention in the report of reliance on his work on the Electrolux dryer fire case involved in the Carrier One arbitration. Electrolux has suffered no unfair surprise or inability to understand what Keefe will testify.

Considering the final factor, the Court does not find bad faith on the part of Allstate. Electrolux argues that GHSGO provided the documents to Keefe in their capacity as counsel to Allstate after obtaining the documents from the Carrier One file. There is no evidence to support this contention. When the Court ordered Allstate to produce the Confidential Documents for *in camera* review, GHSGO's attorney submitted an affidavit attesting that the documents were obtained from Keefe in a sealed package, which was in turn delivered to this Court. Electrolux's claim that GHSGO attorneys supplied the documents to Keefe in their capacity as Allstate's attorneys, rather than in their capacity as Carrier One's attorneys, is simply without evidentiary foundation.

The Court notes that in those cases in which expert reports were stricken, the violation was far more severe than the present case. *See, e.g.*, *Ciomber*, 527 F.3d at 641, 643 (finding the violation was not harmless where the "undeveloped expert report was woefully deficient" and one party "was forced to depose [the expert] with little or no understanding as to what he would testify."); *WDT Wireless Commc'n, Inc.*, 2010 U.S. Dist. LEXIS 109323, at *7-11 (finding that the Rule 26 violation was not justified or harmless where Plaintiff designated its expert witness two months after the close of discovery).

## C. DISQUALIFICATION OF ALLSTATE'S EXPERT KEEFE IS NOT NECESSARY TO MAINTAIN THE INTEGRITY OF THE ADVERSARY PROCESS OR PROMOTE PUBLIC CONFIDENCE IN THE LEGAL SYSTEM.

Courts have inherent authority to disqualify expert witnesses to protect the integrity of the adversary process and to promote public confidence in the legal system. *Lifewatch*

*Serv., Inc. v. Braemer*, No. 09 C 6001, 2010 WL 3909483, at *1 (N.D. Ill. Sept. 28, 2010).

A party seeking disqualification must show that 1) a confidential relationship existed

between itself and the expert and 2) it exchanged confidential information that is relevant to

the litigation with the expert. *Id.* In addition to the test for expert disqualification, courts

balance competing policy objectives to determine expert disqualification: "The court has an

interest in preventing conflicts of interest and maintaining judicial integrity. However,

experts should be allowed to pursue their trade, and parties should be permitted to select their

own experts." *Chamberlain Grp., Inc. v. Interlogix, Inc.*, No. 01 C 6157, 2002 WL 653893,

at *4 (N.D. Ill. Apr. 19, 2002). Disqualification of an expert is a "drastic measure that courts

should hesitate to impose except when absolutely necessary." *Id.* at *2. There must be a

substantial relationship between confidential information acquired and the matters to which

the expert is expected to testify. *Miller v. Lenz*, No. 08 C 773, 2009 U.S. Dist. LEXIS 92202,

at *8 (N.D. Ill. Oct. 2, 2009).

The cases in which experts are disqualified are generally limited to the situation in

which an expert has obtained confidential information directly from the moving party and

then testifies for the opponent. *See, e.g.*, *Lifewatch Serv.*, 2010 WL 3909483, at *2-3

(disqualifying an expert in a patent case where the expert invented the patent, assigned his

rights to plaintiff, agreed to do everything possible to assist plaintiff in the litigation and then

contacted defendant to become an expert); *see also BP Amoco*, 500 F. Supp. 2d at 961-62

(declining to disqualify an expert where a direct contract, with a confidentiality provision,

existed between the expert and the party he was to testify against but no confidential

information was actually shared); *Chamberlain*, 2002 WL 653893, at *6 (declining to disqualify an expert where the expert was previously exposed to confidential information of the moving party's predecessor).

In *Chamberlain*, the district court explained: "Courts that have disqualified experts on conflict of interest grounds do so when the expert 'switches sides' in the same litigation. Under those circumstances, the risk of disclosure of confidential information is high and the public's trust in the integrity of the judicial system is at stake." *Chamberlain*, 2002 WL 653893, at *5. Much like in *Chamberlain*, those concerns are not present in the case at bar and Electrolux has not carried the heavy burden required to justify disqualification.

Keefe has never served as an expert for Electrolux, but rather for parties adverse to Electrolux. Electrolux's confidential relationship with Keefe is not direct: the Arbitration Agreement was between Electrolux and Carrier One, refers only to the parties, and applies to Keefe through his retention as a consulting expert. Moreover, Keefe received that information, not as an expert for Electrolux, but as a consultant for Carrier One in a separate arbitration. Keefe has not "switched sides" as it relates to Electrolux. In light of the competing policy factors described above—particularly that of allowing experts to practice their craft— the Court does not find that Electrolux has carried the heavy burden required to justify the extreme sanction of expert disqualification.

In ordering Keefe to strike any reference in his report to the Confidential Documents he obtained that were not duplicative of non-confidential material, the Court essentially asks Keefe to compartmentalize the information he learned in those other matters; he must

exclude that information from the basis for his opinions. This may sound like a difficult task, but the Court notes that it is the same feat we ask of juries and judges on a daily basis. When testimony is stricken during a trial, jurors are instructed to not consider that information in their deliberations. When a judge grants a motion *in limine* to exclude evidence before a bench trial, he or she must disregard information learned when deciding the motion. Similarly, *Daubert* motions which are granted in part require a judge to "forget" information. To ask an expert to "forget" or exclude information obtained in one case while forming an expert opinion in another case is not an impossibility; rather, it is a task performed by various individuals in the court system each day. The Court is convinced that Keefe has compartmentalized the confidential information and that information does not impact his opinion in the present matter. Accordingly, all references to confidential information should be stricken from his report.

## V. CONCLUSION

For the reasons set forth in this opinion, the Court denies Defendant's Motion to Strike Expert Report or Disqualify Expert from Offering Testimony. In order to maintain a level playing field under Rule 26(a)(2) the Court holds as follows:

1. Keefe shall not consider or rely upon confidential information received in the Carrier One arbitration in the preparation of his expert report in this case.

2. Keefe shall strike any reference to such information from the Appendix to his report and otherwise modify his report if necessary.

3. Keefe must produce all non-confidential information considered and relied upon in the preparation of his report, if he has not already done so.

4. Defendant shall not cross-examine Keefe on any confidential information from the Carrier One arbitration.

**5. To the extent identical or similar information marked confidential in the Carrier One arbitration has been produced in a non-confidential form elsewhere, it may be considered and relied upon by Keefe in the preparation of his expert report or used by Defendant in cross-examining Keefe.**

**SO ORDERED THIS 4TH DAY OF JANUARY, 2012.**

**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

Copies sent to:

Brad M. Gordon
William J. Hoffmann
Katherine Carty Crouch
Grotefeld Hoffmann Schleiter Gordon
    & Ochoa LLP
311 S. Wacker Drive
Suite 4500
Chicago, IL 60606

**Counsel for Plaintiff**

Salvador Andrew Crranza
William P. Heffernan
SmithAmundsen LLC
150 North Michigan Avenue
Suite 3300
Chicago, IL 60601

Sharon Ann Luarde
Brouse McDowell, LPA
600 Superior Avenue East
Suite 1600
Cleveland, OH 44114

Michael J. Summerhill
Tina C. Mazzulla
Freeborn & Peters LLP
311 South Wacker Drive
Suite 3000
Chicago, IL 60606

**Counsel for Defendant**